1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

EMMA DUNN,                              )    1:08cv01272 DLB
                                       )
                                       )
                                       )    ORDER REGARDING PLAINTIFF'S
                     Plaintiff,        )    SOCIAL SECURITY COMPLAINT
                                       )
     v.                                )
                                       )
MICHAEL J. ASTRUE, Commissioner        )
of Social Security,                    )
                                       )
                                       )
                     Defendant.        )
_____)

## BACKGROUND

Plaintiff Emma Dunn ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for disability

insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before

the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her initial application on June 6, 2006, alleging disability since March 1,

2005, due to pain in the left side of her body, vision problems and mental problems.  AR 66-68,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On March 20, 2009, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

71-81.  After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 47-48, 49, 58-62.  ALJ Christopher Larsen held a hearing on December 14, 2007, and denied benefits on February 27, 2008.  AR 13-23, 375-426.  On June 26, 2008, the Appeals Council denied review.  AR 6-10.

Hearing Testimony

ALJ Larsen held a hearing on December 14, 2007, in Fresno, California.  Plaintiff appeared with her attorney, Dennis Bromberg.  Vocational expert ("VE") Jose Chaparro also appeared and testified.  AR 375.

Plaintiff testified that she was 47 years old at the time of the hearing.  She was 4'11" tall and weighed 165 pounds.  AR 381.  She completed the tenth grade and attended vocational school in 1996 and 1997.  AR 381.  Plaintiff last worked in March 2005 as a customer service representative for a mortgage company.  AR 382.

Plaintiff lives with her 23 year old daughter and 13 year old son.  AR 412.  She is home alone during the days and knits and watches television.  AR 412.  She is able to dust the furniture, make her bed, do some cooking and sweep a bit.  She only shops for groceries about once a month because "it's too long" and "hurts."  Her daughter does the laundry.  She also sits and watches her son play and tries to walk twice a week.  AR 413.  She goes to church once a week, though she cannot make it through the 45 minute service because of pain in her back or leg.  AR 414-415.

When questioned by her attorney, Plaintiff testified that she could not work because of daily stabbing pain in her lower back.  AR 389.  Her pain increases with sitting or standing too long and with reaching.  Medication helps but does not take away the pain completely.  Moving around a little also helps.  AR 391.  She uses heating pads and ice packs, and has been using a cane for about two months.  AR 392.

Plaintiff also has problems with her left leg, between her knee and calf, including shooting pain and numbness.  AR 394.  The numbness happens about once a day and lasts for about 20 minutes.  When she gets pain in her back, it usually shoots down into her leg.  This happens about three times a day, usually when she's been sitting or standing too long, or after she

1   reaches.  AR 395-396.  Medication helps a little and she also uses a heating pad.  AR 397.

2   Plaintiff recently received a permanent disabled parking placard because of the limitations in her

3   lower extremities.  AR 403.

4        Before Plaintiff used the cane, she estimated that she could walk about three blocks

5   before needing to stop and sit.  She could stand for about 20 minutes, twice a day.  AR 398, 416.

6   Since she's used the cane, she thought she could walk for about 2 blocks and stand for 20

7   minutes.  AR 399.  Plaintiff thought that she could sit for about 40 minutes.  AR 416.

8        Plaintiff also testified that she has problems with carpal tunnel syndrome ("CTS") in her

9   left arm, which causes a stabbing, shooting pain in her palm about four times a day.  AR 400.

10  Plaintiff also explained that the pain shoots up her arm to her elbow.  She has been dropping

11  things with her left hand for the past year.  AR 402.

12       Plaintiff testified that her mental problems began when her father died in 2004.  She takes

13  sleep medication, which helps her sleep, and antidepressants.  AR 404.  Her energy level is low

14  and she cannot focus or pay attention to things.  AR 406.  Plaintiff enjoys knitting and testified

15  that she could knit for about 20 minutes before needing to stop for lack of focus.  AR 409.  Six

16  months after her father died, Plaintiff began hearing voices.  At that time, she was hearing the

17  voices three times a day, but now that she is getting treatment, she only hears them once or twice

18  a week.  AR 407-408.  She testified that since her father's death, she thinks about suicide twice a

19  day and cries everyday, for about 30 minutes, because she is sad.  AR 410-411.

20       For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,

21  education and work experience.  This person could not maintain sufficient concentration and

22  attention to understand, remember and carry out even simple one or two step job instructions.

23  With just this limitation, the VE testified that Plaintiff could not perform any work.  AR 420.

24       For the second hypothetical, the ALJ asked the VE to assume that this person could lift 20

25  pounds occasionally, 10 pounds frequently, stand and walk a total of six hours and sit for a total

26  of six hours.  This person could not climb ladders, ropes or scaffolds and could occasionally

27  stoop and bend.  This person could understand, remember and carry out simple one or two step

28

job instructions.  The VE testified that this person could not perform Plaintiff's past work, but could perform light work jobs such as house cleaner or agricultural produce sorter.  AR 420-421.

If this person could only stand and walk for a total of two hours, with a cane, she could perform sedentary work, of which there were about 3,900 positions in California.  AR 423.

Plaintiff's attorney asked the VE to add a limitation that this person could not use the non-dominant upper extremity for two hour increments.  The VE testified that the number of positions that this person could perform, if any, would be extremely limited.  AR 424.

Medical Record

*Evidence Before the ALJ*

On January 24, 2005, Plaintiff presented to the emergency room at St. Agnes Medical Center.  She indicated that she had been in a motor vehicle accident on January 21, 2005, and had left arm pain.  X-rays of her left forearm were negative, though she had limited range of motion in her shoulder.  Plaintiff was told to use a heating pad and hot compresses and to see her doctor as needed.  AR 365-371.

On May 18, 2005, Plaintiff went to the emergency room at St. Agnes Medical Center. She complained of back and hip pain after being assaulted.  Plaintiff reported that she thought she blacked out for a while, but remembered being "beaten up."  X-rays of her cervical spine showed degenerative changes, but the study was limited by Plaintiff's "body habitus."  X-rays of her left knee were normal.  Plaintiff was diagnosed with muscle strain and knee pain, and prescribed pain medication.  AR 356-365.

On August 22, 2005, Plaintiff presented to the Palm Medical Group.  She reported that she did not go to the hospital after the car accident and complained of cervical, lumbar and joint pain.  She had spasms, tenderness and limited range of motion in her cervical and lumbar spine. Plaintiff had full range of motion in her knees and her gait was normal.  She was prescribed anti-inflammatory and muscle relaxant medication, as well as physical therapy.  AR 330, 344-347.

On April 4, 2006, Plaintiff saw Madhava Narala, M.D., for pain radiating to her left lower extremity.  She had decreased range of motion in her neck due to pain.  AR 228.

1    _____On April 19, 2006, Dr. Narala completed a Doctor's Certificate for California Disability

2    Insurance Benefits.  He opined that Plaintiff became disabled on April 4, 2006, and anticipated

3    that she could return to work on June 1, 2006.  Her disability was due to severe neck and back

4    pain.  AR 227.

5    _____In May 2006, Plaintiff began treating with Perminder Bhatia, M.D., of the Neuro-Pain

6    Medical Center, for complaints of radiating neck and back pain since the car accident in January

7    2005.  Plaintiff reported that pain medications have not helped and that it is hard for her to walk

8    around.  She also reported that she is getting depressed due to the pain.  On examination, her

9    motor examination was normal and reflexes were slightly diminished.  Sensation was decreased

10   to pinprick in the whole of the left side of the face, arm and leg.  Plaintiff's gait was normal,

11   though she had restricted movements of her cervical and lumbar spine.  There was mild cervical

12   and lumbar paravertebral muscle spasm.  Dr. Bhatia noted, "she just jumps, on touching her neck

13   and back."  He further noted that there seems to be "a lot of psychological overlay, where there

14   seems to be some exacerbation of her symptoms."  He started her on pain medications and

15   scheduled an EMG.  AR 253-254.

16   _____On June 20, 2006, Plaintiff underwent an EMG for complaints of left-sided neck pain

17   radiating to her left arm.  The study was normal except for a very mild CTS in the left side.  Dr.

18   Bhatia recommended clinical correlation.  AR 250.

19   _____On July 10, 2006, Plaintiff went to First Health Medical Center of Fresno after slipping

20   and falling on July 1, 2006.  She reported that she sustained injuries to her lower and upper back,

21   left hand, and both knees and feet.  In reporting her health history, she indicated that she did not

22   have prior frequent neck pain, severe/frequent headaches, lower back problems or psychiatric

23   problems.  AR 282-283.

24   _____On July 25, 2006, Plaintiff underwent an EMG.  The test showed electrical evidence of

25   clinical diagnosis of possible L4 radiculopathy on the left side.  Dr. Bhatia recommended a

26   clinical correlation and MRI.  AR 247.

27         Plaintiff underwent physical therapy from July 2006 through October 2006.  On July 17,

28   2006, she reported that therapy was helping with her neck and back pain.  AR 270-278.

Plaintiff underwent an MRI of her lumbar spine on August 17, 2006.  The test revealed mild degenerative changes of her lumbar sacral spine with mild central spinal stenosis at the L4-5 level and bilateral L4-5 neural foramen.  AR 245-246.

Plaintiff saw Shireen R. Damania, M.D., for a consultive psychiatric evaluation on September 18, 2006.  Plaintiff indicated that she "lost her memory" following a car accident in January 2005.  Plaintiff told Dr. Damania that she had an MRI of her back and was told "it did not look very good."  She reported a tendency to "fall," but was not prescribed an assistive device.  She described her pain as being on the left side, where she was hit on the driver's side and her head hit the windshield.  The pain goes down her arm, down to her leg and up to her neck.  She also reported that she cannot play with her son anymore and "sit[s] at home and cr[ies]."  She said her husband gives her "coloring books" so that she does not "hit on herself." Plaintiff reported that she takes her son to school, lays down during the day, does simple meal preparation, picks her son up from school and then takes him to any after school activities.  She does light chores, though her children help out with heavy chores.  AR 313-316.

On mental status examination, her mood was depressed and she was mildly anxious. Plaintiff became tearful when discussing her situation.  Plaintiff denied any suicidal or homicidal ideations and impulse control and frustration tolerance were within normal limits.  There was no evidence of hallucinations, delusions or a thought disorder.  Her memory for recent and past recall was grossly intact and she recalled facts without difficulty.  Plaintiff's attention span was within normal limits and she was of average intelligence.  Insight and judgment were adequate. AR 316-317.

Dr. Damania diagnosed adjustment disorder with depressed mood versus mood disorder due to general medical condition with depressive features.  She opined that Plaintiff could understand, remember and carry out simple one and two step job instructions in an unskilled setting.  Plaintiff was pleasant and cooperative and could respond appropriately to coworkers, supervisors and the public.  She could also deal with changes in a routine work setting if the instructions were presented simply and unidimensionally.  Dr. Damania did not believe that Plaintiff was capable of handling funds.  AR 317.

1    _____On October 17, 2006, State Agency physician Carmen DeLaRosa Lopez, M.D.,

2    completed a Physical Residual Functional Capacity Assessment.  Dr. Lopez opined that Plaintiff

3    could occasionally lift 20 pounds, 10 pounds frequently, stand and/or walk about 6 hours in an

4    eight hour day and sit for about 6 hours in an eight hour day.  She could occasionally stoop.

5    AR 302-306.

6    _____On October 24, 2006, State Agency physician R.Y. Hood, M.D., completed a Psychiatric

7    Review Technique Form.  In rating Plaintiff's functional limitations, Dr. Hood opined that she

8    had mild restrictions in activities of daily living, mild difficulties in maintaining social

9    functioning and mild difficulties in maintaining concentration, persistence of pace.  AR 286-296.

10   In a related Mental Residual Functional Capacity Assessment, Dr. Hood opined that Plaintiff had

11   no significant limitations.  She could understand and remember simple and some detailed tasks

12   and could carry out simple tasks for a normal work week.  AR 298-300.  This opinion was

13   affirmed on April 12, 2007.  AR 260.  _____

14   _____Plaintiff saw David Baker, PAC, a certified nursing assistant at Dr. Bhatia's office, on

15   October 23, 2006.  Her sensory examination was normal, though tone and reflexes were

16   diminished.  Straight leg raising was negative and her gait was normal.  Range of motion in her

17   neck and back was reduced.  AR 244.

18   _____Plaintiff returned to Dr. Bhatia on November 1, 2006.  Her motor and sensory

19   examinations were normal and her reflexes were diminished.  Her gait was normal although she

20   had restricted movements of her cervical and lumbar spine.  Dr. Bhatia told Plaintiff to "stay off

21   work" until the end of January 2007 because of pain, depression and psychomotor retardation.

22   AR 242-243.

23   _____On January 8, 2007, Plaintiff returned to Dr. Bhatia.  On examination, her motor and

24   sensory examinations were normal, through her reflexes were diminished.  Plaintiff's gait was

25   normal.  He explained that Plaintiff was being followed for "chronic neck and back pain possible

26   fibromyalgia and also hearing voices and I am not sure if this is depression or psychosis."  He

27   prescribed medication to help in the "possible psychotic episode" and referred her to Dr. Atwal

28   for a psychiatric evaluation.  AR 240-241.  _

1    _____Plaintiff saw Physician's Assistant Baker on July 27, 2007.  Her gait was normal and

2    straight leg raising was negative.  He recommended physical therapy and prescribed pain

3    medications.  AR 239.  _____

4    _____Plaintiff attended physical therapy in August and September 2007.  A progress note dated

5    September 6, 2007, indicated that Plaintiff had progressed well and had improved her walking

6    ability (to 15 to 20 minutes) and overall function.  After examination, John Rendig, MPT, noted

7    that Plaintiff had signs and symptoms of lumbar disc injury with radiculopathy, with overall

8    deconditioning.  AR 236-237.

9    _____On September 7, 2007, Plaintiff saw Physician's Assistant Baker.  She was oriented times

10   three and her memory was intact.  Straight leg raising was negative and her gait was normal.

11   Range of motion in her back and neck was full.  AR 233.

12   Plaintiff saw Dr. Narala on October 3, 2007.  She complained of intermittent pain in her

13   lower back with radiation to her right lower extremity.  She also complained of diffuse pain over

14   her spine.  He recommended that Plaintiff be referred to Ganesh Prasad, M.D., for pain

15   management.  AR 219.

16   _____On November 2, 2007, Dr. Bhatia recommended that Plaintiff receive a permanent

17   disabled person parking placard and license plates.  He believed that she had significant

18   limitations in the use of her lower extremities due to lumbar degenerative disc disease.  AR 231-

19   232.

20   _____On December 13, 2007, Plaintiff saw Dr. Prasad for low back pain with radiation into her

21   left leg and right hip since July 1, 2006.  Plaintiff reported that her back was fine prior to her slip

22   and fall.  He diagnosed low back pain with radiation to the left lower extremity, mild

23   degenerative disc disease and a disc bulge at L4-L5.  AR 215-216.

24   _____*Evidence Before Appeals Council*

25   Plaintiff underwent an MRI of her lumbar spine on February 13, 2008.  The test revealed

26   minimal spondylotic changes of the lumbar spine most pronounced at L4-L5 with a mild diffuse

27   disc bulge, but no significant spinal stenosis.  It also revealed facet athropathy changes at L4-L5

28

1  contributing to bilateral-lateral recess stenosis and inferior neural foraminal narrowing.  Overall,

2  the findings were stable.  AR 373-374.

3         On April 24, 2008, Harold L. Tyson, Ph.D., wrote a letter indicating that he had seen

4  Plaintiff daily since April 19, 2008.  He believed that she had severe symptoms of major

5  depression and could not work.  AR 372.

6         ALJ's Findings

7         The ALJ determined that Plaintiff had the severe impairments of lumbar spine

8  degenerative disc disease and an adjustment disorder with depressed mood.  AR 18.  She retained

9  the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds

10  frequently, stand and walk a total of six hours and sit for a total of six hours.  Plaintiff could

11  occasionally stoop and crouch, but could never climb ladders, ropes or scaffolds.  Plaintiff could

12  understand, remember, and carry out simple one and two step tasks.  AR 19.  Based on the

13  testimony of the VE, the ALJ concluded that Plaintiff could perform a significant number of

14  positions in the national economy.  AR 23.

15                                    **SCOPE OF REVIEW**

16         Congress has provided a limited scope of judicial review of the Commissioner's decision

17  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

18  the Court must determine whether the decision of the Commissioner is supported by substantial

19  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

20  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

21  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

22  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

23  401.  The record as a whole must be considered, weighing both the evidence that supports and

24  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

25  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

26  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

27  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

28  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

1  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

2  Cir. 1987).

3  **REVIEW**

4   In order to qualify for benefits, a claimant must establish that he is unable to engage in

5  substantial gainful activity due to a medically determinable physical or mental impairment which

6  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

7  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

8  such severity that he is not only unable to do her previous work, but cannot, considering his age,

9  education, and work experience, engage in any other kind of substantial gainful work which

10 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

11 The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

12 Cir. 1990).

13  In an effort to achieve uniformity of decisions, the Commissioner has promulgated

14 regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

15 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

16 found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

17 her disability; (2) has an impairment or a combination of impairments that is considered "severe"

18 (lumbar spine degenerative disc disease and an adjustment disorder with depressed mood) based

19 on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment

20 or combination of impairments which meets or equals one of the impairments set forth in

21 Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5)

22 retains the RFC to perform a significant number of jobs.  AR 18-23.

23  Here, Plaintiff argues that the ALJ improperly rejected her testimony.

24 **DISCUSSION**

25  Plaintiff argues that the ALJ failed to set forth clear and convincing reasons for rejecting

26 her testimony about the extent of her limitations.

27

28

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive."  *Id.*  Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing."  *Id.*

> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand).  Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

After setting forth the applicable standards for evaluating credibility, the ALJ first

contrasted Plaintiff's testimony about her psychological problems with her statements to

examining physicians.  For example, Plaintiff testified that she had thought about suicide twice a

day, and cried daily, since her father died in 2004.  AR 20, 410-411.  However, the ALJ noted

that during her September 2006 consultive examination, Plaintiff told Dr. Damania that her

father died on April 11, 2005.  AR 315.  She also denied any suicidal ideation.  AR 371.

The ALJ continues, "[w]hile Ms. Dunn alleged a wide variety of symptoms and odd

behaviors, she never told Dr. Damania she cried daily."  AR 20.  Plaintiff suggests that her report

to Dr. Damania that she "does nothing but 'sit at home and cry'" negates the ALJ's statement.

Opening Brief, at 8.  While Plaintiff did report to Dr. Damania that she "sit[s] at home and

cr[ies]," Plaintiff exaggerates her statement by adding the "nothing but" in her briefing.  Plaintiff

did not tell Dr. Damania that she does "nothing but" sit at home and cry.  To the contrary,

Plaintiff reported that she drives her son to school, may watch a little television, and does "what

11

1   she can do." AR 315.  She picks up her son from school and takes him to, and attends, any

2   extracurricular activities.  Plaintiff is also able to do light chores.  AR 316.

3          Plaintiff's report of her daily activities to Dr. Damania, and her own testimony, contradict

4   the statement in her briefing.  The ALJ was correct in stating that Plaintiff did not tell Dr.

5   Damania that she cried everyday, and regardless of whether "sitting at home and crying" equates

6   to "crying every day," the ALJ was entitled to interpret Dr. Damania's report in assessing

7   Plaintiff's credibility.  It is not the role of this Court to redetermine Plaintiff's credibility *de novo*.

8   Although evidence supporting an ALJ's conclusions might also permit an interpretation more

9   favorable to the claimant, if the ALJ's interpretation of evidence was rational, as here, this Court

10  must uphold the ALJ's decision where the evidence is susceptible to more than one rational

11  interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

12         The ALJ next explains that the June 2006 EMG, which was normal except for very mild

13  CTS on the left, "cannot be reasonably construed to support these subjective complaints."  AR

14  20, 250.  At the hearing, Plaintiff testified that she has stabbing, shooting pain in her palm about

15  four times a day, and that the pain shoots up her arm, to her elbow.  AR 400.  Although Plaintiff

16  suggests that Dr. Bhatia's recommendation of clinical correlation supports her claims, the ALJ

17  was entitled to contrast the objective medical evidence with Plaintiff's statements and draw a

18  rational conclusion.  *Burch*, 400 F.3d at 681.  As Plaintiff argues the objective evidence may not

19  always correlate to the actual level of pain, but here, Dr. Bhatia's clinical observations supported

20  the EMG results.  For example, a month before her EMG, Dr. Bhatia found that Plaintiff had

21  normal strength and tone in her upper extremities.  AR 254.  Although he found slightly

22  decreased reflexes and sensation, he did not render any diagnoses or limitations relating to her

23  upper extremities.  Similarly, in her follow ups with Dr. Bhatia or his physician's assistant, aside

24  from an instance of decreased tone and findings of slightly decreased reflexes, examinations of

25  her upper extremities were normal and did not result in any related diagnoses or limitations.  AR

26  231-232, 240-244.

27         The ALJ continues his credibility analysis by citing Plaintiff's poor work history,

28  explaining that she engaged in substantial gainful activity for only three of the past twenty five

12

years.  AR 20.  Plaintiff argues that she did not work because she was raising her children and

faults the ALJ for not inquiring into the reasons behind her minimal work history.  The Court

agrees that failing to explore why a claimant did not work and then using an unsupported

conclusion to undermine credibility is improper.  However, where the remaining factors are

proper, as here, the credibility determination should be upheld.  *Batson v. Barnhart*, 359 F.3d

1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason

may have been in error).

_____Next, the ALJ sets forth a series of inconsistencies in the medical records.  Indeed, the

ALJ may use "ordinary techniques" in addressing credibility.  *Light v. Soc. Sec. Admin.*, 119 F.3d

789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence."  *Macri*

*v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).  For example, while Plaintiff told Dr. Damania that

she and her son were taken to the emergency room after her January 2005 motor vehicle accident

and she thought lost consciousness, the record shows that Plaintiff went to the emergency room

three days later and there was no indication that she lost consciousness.  AR 313-314, 367-368.

The ALJ also points out that when Plaintiff completed her health history after a July 2006 slip

and fall, she denied having any medical conditions, frequent neck pain, lower back problems or

psychiatric problems in the past even though she elsewhere reported pain since the 2005 accident

and psychological issues since her father's death in 2004.  AR 228, 253-254, 282-283, 330, 344-

347, 365, 371, 404.

_____Plaintiff's challenges to these inconsistent statements appear to be based on a mistaken

characterization of the ALJ's use of the evidence.  For example, Plaintiff suggests that the fact

that she did not go to the emergency room until three days after the accident "has nothing to do

with a Social Security disability case where causation is irrelevant."  Opening Brief, at 9.

However, the ALJ was not using the evidence to establish causation of her impairments, but

rather was citing the inconsistent statements as support for his finding that Plaintiff was not

credible.  She further suggests that her life did not become an "open book" when she slipped

while shopping in July 2006, but her inconsistent statements are certainly relevant to assessing

her credibility.  Opening Brief, at 9.

1    Finally, the ALJ noted that Dr. Bhatia, Plaintiff's own treating physician, believed that
2  she showed "a lot of psychological overlay, where there seems to be some exacerbation of her
3  symptoms." AR 21, 254.  Dr. Bhatia also noted that "just jumps, on touching her neck and
4  back." AR 254.  While the Court recognizes that pain can be rooted in psychological symptoms,
5  given the other factors demonstrating Plaintiff's questionable credibility, the ALJ was entitled to
6  rely on Dr. Bhatia's opinion in finding Plaintiff not credible.  Moreover, contrary to Plaintiff's
7  suggestion, a finding of a severe mental impairment does not necessarily equate to finding that
8  the mental impairment supports her pain testimony.

9    For the reasons stated above, the Court finds that the ALJ set forth sufficient reasons to
10  allow the Court to conclude that he did not arbitrarily discredit Plaintiff's subjective complaints.
11  Accordingly, Plaintiff's claim is without merit and must be denied.

12                                     **CONCLUSION**

13    Based on the foregoing, the Court finds that the ALJ's decision is supported by
14  substantial evidence in the record as a whole and is based on proper legal standards.
15  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the
16  Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in
17  favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,
18  Emma Dunn.

19

20    IT IS SO ORDERED.

21    **Dated:**   **June 19, 2009**                    **/s/ Dennis L. Beck**
22                                         UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

                                           14